# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHAD HATTEN, | § | |
| | § | |
| Defendant-Petitioner, | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-05-244 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent. | § | |
| | § | |
| CIVIL ACTION H-07-2288 | § | |

## MEMORANDUM AND OPINION

Chad Hatten filed a motion under 28 U.S.C. § 2255, seeking to vacate his 2005 conviction. Hatten pleaded guilty to a five-count superseding criminal indictment. The indictment charged Hatten with three counts of fraud in connection with access devices, in violation of 18 U.S.C. § 1029(a)(3) or (4); access device fraud, in violation of 18 U.S.C. § 1029(a)(2); and aggravated identity theft, in violation of 18 U.S.C. § 1029(A). There was no written plea agreement. The court accepted Hatten's guilty plea and sentenced him to 90 months in prison. Hatten's appeal to the United States Fifth Circuit Court Of Appeals (No. 07-20346) was dismissed on July 11, 2007, for failing to file a timely Notice of Appeal. Hatten timely filed this motion for relief under 28 U.S.C. § 2255. He presents the following claims:

    1.    Defense counsel provided ineffective assistance by:

a.    allowing him to enter a guilty plea while he was experiencing chest pain and under medication and advising the court that he appeared to be fine;

b.    failing to file a timely Notice of Appeal after having been asked to do so;

c.    failing to obtain and submit medical records to the court concerning his mental health issues;

d.    failing properly to argue against the role enhancement;

e.    failing to argue against the inclusion of 1400 social security numbers in the loss calculation; and

f.    failing to make the Court aware of a relationship between Hatten and another individual for which the Court would have allegedly granted an additional downward departure.

2.    Hatten alleges that his guilty plea was not knowing or voluntary.

3.    Information learned by the government during the proffer formed the basis for additional charges against Hatten, as well as the addition of relevant conduct.

4.    Counsel failed to file objections to the Presentence Report after having been requested to do so.

The government argues in its response and motion to deny relief that there is no basis for finding ineffective assistance of counsel.  The government also moves to expand the record to include defense counsel's and appellate counsel's affidavit; that motion is granted.

2

Based on the motion and response, the parties' submissions, the record, and the applicable law, this court denies Hatten's motion for relief and, by separate order, enters final judgment.  The reasons are set out in detail below.

## I.    Background

At Hatten's rearraignment, the prosecutor described Hatten's conduct, and he admitted its truth.  The presentence report also describes Hatten's conduct.  (Docket Entry No. 40). Hatten was contacted by a United States Secret Service agent in November 2004 as part of an investigation into a criminal organization known as "Shadowcrew," an international organization of approximately 4,000 members that promotes a wide variety of criminal activities, including electronic theft of personal identifying information, credit card and debit card fraud, and the production and sale of false identification documents.  Hatten verbally consented to a search of his residence.  Agents seized a SecureTech encoder, five pieces of white plastic in the size and shape of credit cards, and a computer file with nine stolen credit card numbers.  Hatten admitted that the encoder was used for encoding credit card numbers onto magnetic strips on white plastic cards for purposes of fraudulently purchasing goods and services.  Hatten admitted to being a member of the "Shadowcrew" criminal organization. Investigation showed that he used the Shadowcrew website to engage in credit card fraud and gift card vending,  purchasing gift cards at stores using counterfeit credit cards and reselling the cards for a percentage of their actual value.

Hatten was arrested on June 28, 2005.  On the evening of the arrest, a Secret Service Special Agent returned to Hatten's apartment and found a credit card encoder belonging to

Hatten in the common area of his apartment, which his roommate gave written and oral consent to search.   A search incident to Hatten's arrest revealed 11 merchant gift cards in his wallet, which were later determined to be fraudulent and purchased with stolen credit card numbers.  The Special Agent saw a plastic bag in the back seat of Hatten's car containing what appeared to be a stack of cards in the size and shape of credit cards.  The plastic bag was later determined to contain 93 merchant gift cards.  The 93 cards were later determined to be fraudulent and purchased with stolen credit cards in and around the Houston area.  The Special Agent also retrieved a USB thumb drive from a cigarette pack in Hatten's pants.  The thumb drive was searched the next day pursuant to a warrant; the search revealed 621 stolen credit card numbers.  The Secret Service determined that at least some of the stolen credit card numbers on Hatten's "thumb drive" were used to purchase some of the gift cards located either in Hatten's car or in his wallet.

On October 31, 2005, Hatten entered a guilty plea to Counts 1S through 5S of the superseding indictment, without a written plea agreement.  Hatten was sentenced to 90 months in prison, with a supervised release term of 3 years, and a $500 special assessment.  Although restitution was assessed in the amount of $67,815, an amended judgment entered on August 9, 2007 shows no restitution.  Hatten's appeal was dismissed for failing to file a timely Notice of Appeal.  This section 2255 motion followed.

## II.    The Applicable Legal Standards

Hatten is proceeding *pro se*.  Courts construe *pro se* litigants' pleadings under a less stringent standard than is applied to pleadings filed by attorneys.  *See Haines v. Kerner*, 404

4

U.S. 519, 520 (1972); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).  Pleadings filed

by a *pro se* litigant are liberally construed.  *See United States v. Pena,* 122 F.3d 3, 4 (5th Cir.

1997) (citing *Nerren v. Livingston Police Dept.,* 86 F.3d 469, 472 & n.16 (5th Cir. 1996)).

      28 U.S.C. § 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by
> Act of Congress claiming the right to be released upon the
> ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

      "Section 2255 provides the primary means of collateral attack on a federal sentence.

Relief under this section is warranted for any error that occurred at or prior to sentencing."

*Cox v. Warden, Federal Detention Center,* 911 F.2d 1111, 1113 (5th Cir. 1990) (internal

quotations and citations omitted).  A section 2255 motion does not require an evidentiary

hearing if the motion and the record conclusively show that the prisoner is not entitled to

relief.  *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992).

      To prevail on a claim of ineffective assistance of counsel, a petitioner must show that

his counsel's actions fell below an objective standard of reasonableness and petitioner

suffered prejudice as a result.  *Strickland v. Washington,* 466 U.S.  668 (1984); *Martin v.*

*Cain,* 246 F.3d 471, 477 (5th Cir. 2001).  The district court may dispose of a claim if counsel

either rendered reasonably effective assistance or no prejudice can be shown.  A court

evaluating a claim of ineffective assistance need not address the reasonableness component

first.  If a petitioner fails to make one of the required showings, the court need not address the other.  *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy."  *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993).  If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed."  *Rector v. Johnson,* 120 F.3d 551, 564 (1997)(quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable."  *Id.* at 691.

## III.    Analysis

### A.    The Ineffective Assistance Claims

> *1.    The Claim That Counsel Was Ineffective for Allowing Hatten to Enter a Guilty Plea While Allegedly Experiencing Chest Pain and under Medication and Advising the Court That Hatten Appeared to Be Fine.*

Defense counsel, Eric Sunde, stated in his affidavit that during the plea colloquy, Hatten told him that he did not feel well and that the court inquired about his health.  The

6

court recessed the hearing so that Sunde could talk to Hatten, who took a nitroglycerin tablet and then said that he felt better and wanted to continue with his plea. Sunde stated that he made sure that Hatten was capable of proceeding before beginning the plea colloquy again. Hatten told Sunde that he felt fine and wanted to proceed with the plea. (Docket Entry No. 121, Attachment 2, Sunde Affidavit, ¶ 1).

The record of the rearraignment hearing is consistent. During the plea colloquy, the court asked Hatten if he was all right. Hatten stated that he would be fine and that he would take one of his nitroglycerin pills. The court asked Hatten "[i]f at any time your are unable to continue, will you let me know?" (Docket Entry No. 93, Rearraignment Transcript, pp. 17-18). Hatten said that he would and that he was able to continue. The court continued with the plea colloquy. Hatten was able to answer all the questions responsively. He told the court, under oath, that he understood the consequences of his plea, the rights he was giving up by pleading guilty, the elements of the offenses, and the potential sentence. He admitted to the factual basis and the allegations against him and pleaded guilty. Hatten's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001)(citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

The record shows that defense counsel was not ineffective for allowing Hatten to plead guilty notwithstanding the fact that Hatten had taken medication during the plea colloquy.

     2.     *The Claim That Counsel Failed to File a Timely Notice of Appeal After Having Been Asked to Do So*

In his affidavit, Sunde stated that Hatten never asked him to file a notice of appeal. Sunde talked to Hatten about his options and explained his right to appeal. Sunde stated in his affidavit that Hatten said that he did not want to appeal but rather continue his cooperation and seek a reduced sentence under Rule 35 of the Fed. R. Crim. P. based upon his substantial assistance to law enforcement. (Docket Entry No. 121, Attachment 2, Sunde Affidavit, ¶ 2).

The record is consistent with Sunde's affidavit. At the sentencing hearing, the following colloquy among defense counsel, Sunde, and the court took place:

> COURT:     All right. Mr. Sunde, I don't know if even you have seen the letter that your client wrote. It is not dated. It came in April.
>
> SUNDE:     I have not seen it, your Honor.
>
> COURT:     It troubled me – – and, of course, I read it because it's by way of allocution if you will – – because Mr. Hatten requests time served and – – and if he can't do that, he wants home detention.
>
>      Mr. Hatten's letter makes clear that he does not yet understand the nature and extent of the criminal activity that he pleaded guilty to and that brings him here today. That troubles me.
>
> SUNDE:     Your Honor, Mr. Hatten advises me that at the time that he wrote this letter he expected that some rather more extensive cooperation that he's currently involved with would have been completed.

8

| COURT: | So, he was hopeful about what now looks more likely to result from a Rule 35 motion as opposed to a downward departure today.  Is that what you're telling me? |
|---|---|
| SUNDE: | That's what Mr. Hatten is advising me, yes, your Honor. |
| COURT: | I'll accept that.  But I did want you to understand part of that concern and give you a chance to respond to it, and you have. |

(Docket Entry No. 80, Sentencing Transcript, pp. 28-29).

Sunde's affidavit, Hatten's letter to the court, and Sunde's statements to the court in front of Hatten are consistent and show that Hatten wanted to continue his cooperation and seek a sentence reduction under Rule 35.  Hatten has not shown a basis for relief on this claim.

> 3.    *The Claim That Counsel Failed to Obtain and Submit Medical Records to the Court Reflecting Hatten's Mental Health Issues.*

In his affidavit, Sunde stated that he and Hatten discussed the issue of Hatten's mental health on several occasions.  Sunde sought and received a ten-day continuance of the rearraignment to investigate further.  Sunde stated that Hatten advised that his mental condition involved depression and that when he committed the offenses charged in the indictment, his mental capacity was in no way diminished.  Hatten told Sunde that the PSR accurately described his prior mental health history.  Sunde stated in his affidavit that his observations of Hatten did not lead him to believe that Hatten suffered from the type of

mental disability that could be the basis of a downward adjustment for diminished capacity. Hatten always appeared to reason well and make decisions rationally.

The record of the rearraignment is consistent with Sunde's affidavit.  The following exchange occurred during the hearing:

> COURT:      Can you tell me – – just describe in lay terms, or
>             your own understanding, as to how the condition
>             you've described affects you.
>
> HATTEN:     Some decision-making.  I'd say I get depressed
>             some times and it affects my decision-making.
>
> COURT:      And are you able to tell when you are depressed
>             in a way that affects your decision-making?
>
> HATTEN:     Yes.
>
> COURT:      Are you currently, in your own judgment,
>             depressed in a way that affects your
>             decision-making?
>
> HATTEN:     No.
>
> COURT:      And how do you know that?
>
> HATTEN:     Well, I mean, I'm not happy to be here; but I'm
>             aware of what I'm doing here today.
>
> COURT:      All right.  Mr. Sunde, in your interactions with
>             Mr. Hatten, are you satisfied that Mr. Hatten is
>             able to make an informed and knowing decision
>             and a voluntary decision about whether to plead
>             guilty?
>
> SUNDE:      Your Honor, I am completely satisfied as to his
>             ability to make these decisions. I believe – – I've
>             met with Mr. Hatten somewhere between 15 to 20
>             times, excluding debriefings.  And during the

course of my meetings with Mr. Hatten, he has always struck me as quite coherent, cogent, articulate. He's obviously an educated man. And I have had nothing to indicate to me that he wouldn't be capable of fully understanding what's happening today, the nature of the charges against him, and his voluntariness in entering this plea.

(Docket Entry No. 93, Rearraignment Transcript, pp. 8-10).

The court questioned Hatten about how he felt and what medications he was taking:

| | |
|---|---|
| COURT: | Other than those conditions, are you sick in any way that would affect your ability to understand what's going on here? |
| HATTEN: | No. |
| COURT: | Have you had enough time to talk with your lawyer? |
| HATTEN: | I have. |
| COURT: | Are you satisfied with the advice and the help that your lawyer has given you? |
| HATTEN: | I am. |
| COURT: | We had an opportunity to talk earlier. Are there any other – –do you have any concerns about the advice and the help that your lawyer has given to you? |
| HATTEN: | I don't. |
| COURT: | Has your lawyer asked – – have you asked your lawyer all the questions that you wanted to about the proposed plea? |
| HATTEN: | I have. |

COURT:     Did he answer those questions to your satisfaction?

HATTEN:    He has.

COURT:     Do you want to take any additional time to ask him more questions before we proceed?

HATTEN:    No.

COURT:     Mr. Sunde, have you had enough time to investigate the law and the facts relating to this case?

SUNDE:     Your Honor, I have.

COURT:     Has Mr. Hatten cooperated with you in every respect?

SUNDE:     He has, Your Honor.

COURT:     Do you have any question about his ability to enter a knowing and informed and voluntary plea?

SUNDE:     I do not, Your Honor.

COURT:     Good.   After a more extended than usual opportunity to talk to Mr. Hatten, I agree that he is indeed competent to enter a knowing, informed, and voluntary plea.  And I so find.

(Docket Entry No. 93, Rearraignment Transcript, pp. 12-13).

Hatten has not provided any basis for showing that he was eligible for a downward departure based on his mental condition.  Nor has he provided any basis for showing that had his medical records been submitted to the court, they would have supported a downward

departure for mental illness.  Hatten has not shown that defense counsel's alleged failure to obtain and submit his medical records was deficient or that it caused prejudice.

### 4. The Claim That Counsel Failed Properly to Argue Against the Role Enhancement

In his affidavit, Sunde stated that he and Hatten talked about the PSR's treatment of Hatten's role in the offense.  At sentencing, Sunde objected to the aggravating role adjustment on the ground "not that Mr. Hatten's clients were 'innocent', but rather that he did not direct anyone."   The court overruled the objection.

The record of the sentencing hearing is consistent with Sunde's affidavit.  The record reflects that Sunde argued his objection to the role adjustment.  The prosecutor argued in favor of the PSR's treatment of the role adjustment.  The court overruled Sunde's objection and applied the adjustment, based on the "recruitment and supervisory aspect to Mr. Hatten's relationship to these people, further borne out by the fact that, when law enforcement appears, he turns right to them and says, "Get rid of that evidence," and they do."  (Docket Entry No. 80, Sentencing Transcript, p. 13).

The record defeats Hatten's claim that defense counsel failed properly to argue against a role enhancement.  He is not entitled to relief on this ground.

### 5. The Claim That Counsel Failed to Argue Against the Inclusion of 1,400 Social Security Numbers in the Loss Calculation

Sunde stated in his affidavit that before Hatten pleaded guilty, he and Hatten discussed the inclusion of the social security numbers in the intended loss calculation called for under U.S.S.G. § 2B1.1.  Sunde explained that he had no basis to object to including the social

security numbers and Hatten said that he understood.  At the rearraignment, the court told Hatten that the term "access device" included personal identification numbers and that "means of identification" included social security numbers.  Hatten replied that he understood.

The record provides no basis for concluding that counsel was deficient in failing to object to including the social security numbers in the intended loss amount or that Hatten suffered prejudice as a result.  Any objection would have been frivolous.  "An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."  *See United States v. Kimler*, 167 F.3d 889, 892 (5th Cir. 1999).  Hatten has not shown a basis for relief on this ground.

> 6. *The Claim That Counsel Failed to Make the Court Aware of a Relationship Between Hatten and Another Individual for Which the Court Would Have Granted an Additional Downward Departure*

In his affidavit, Sunde stated that he told the court at sentencing that Hatten had been cooperating with internal affairs at the Federal Detention Center in Houston; that the cooperation was ongoing; and that Hatten hoped that it would result in the government filing a postsentencing motion under Rule 35.  The record of the sentencing hearing is consistent. Sunde told the court: "He's additionally been cooperating with the internal investigative body at the Federal Detention Center, providing information about corruption regarding employees of the Federal Detention Center.  That is an ongoing process.  I expect that that [sic] may form the basis of a Rule 35 motion at a later date."

14

The record shows that Sunde did tell the court of the relationship Hatten refers to, contrary to Hatten's allegation.  There is no basis to conclude that Sunde's performance was deficient as Hatten alleges or that he was prejudiced as a result.   This claim does not entitle Hatten to relief.

### B.     The Claim that the Guilty Plea was not Knowing or Voluntary

Hatten claims that he pleaded guilty because he received incorrect legal advice from Sunde.  Hatten claims that Sunde told him that the aggravated identity theft count would be grouped together with the other counts for sentencing purposes.  Hatten asserts that had he received correct advice from  Sunde, that the aggravated identity theft count not be grouped together with the other counts, he would have "gone to trial and never plead guilty."
In his affidavit, Sunde stated that he explained to Hatten before the rearraignment that the aggravated identity theft count carried a mandatory sentence that would run consecutive to any other sentence he would receive.   Sunde denies that he told Hatten that the aggravated identity theft count would be grouped with any other counts.  Hatten was emphatic that he did not want to go to trial but  wanted to plead guilty and continue to cooperate.

The record of the rearraignment hearing is consistent with the affidavit.  The court specifically admonished Hatten that the identity theft count carried a two-year sentence that had to run consecutive to the sentence imposed for the other counts.  The court had the following exchange with Hatten:

> COURT:    The penalty under the statute for a conviction on
> Count 5 is a  two-year prison sentence that has to
> be  imposed  consecutive  to  any  other  term  of

imprisonment imposed under a different provision
of the law during which a means of identification,
as defined, was transferred, used, or possessed.
Bottom line is that whatever sentence you get on
the other counts, two years have to be added.  Do
you understand that?

HATTEN:     I do.

COURT:      Under the statute the – – under the statute the
maximum possible sentence that you face has to
be calculated looking at my authority to run each
of those counts consecutively.  So, the worst
possible sentence that you face under the statute,
Mr. Hatten, is 50 years in prison, plus 2, because
of the consecutive requirement of the last count,
Count 5, and a total fine that can go as high as a
million dollars. . . . Do you understand that, Mr.
Hatten?

HATTEN:     I do.

(Docket Entry No. 93, Rearraignment Transcript, pp. 22-23).  The court asked Hatten if he

talked to his counsel about how the sentence in this case might be determined, and Hatten

answered in the affirmative.

The record shows that the court fully admonished Hatten as to the elements of the

offense, the consequences of his plea, the rights he was giving up, and the sentence he faced.

Hatten stated that he understood.  Hatten admitted to the truth of the factual basis and the

allegations in the indictment.  The court determined that Hatten was competent to plead

guilty; that the record established all the elements of the offense; and that Hatten's plea was

voluntarily, freely, and knowingly made.

16

A federal court must uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent. *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir.), *cert. denied,* 474 U.S. 838 (1985); *Henderson v. Morgan,* 426 U.S. 637, 645 n.13 (1976). The critical issue in determining whether a plea was voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley,* 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied,* 503 U.S. 988 (1992). If the record shows that the defendant "understood the charge and its consequences," a court will uphold the plea as voluntary. *Davis v. Butler,* 825 F.2d 892, 893 (5th Cir. 1987). The record fully supports finding Hatten's plea to be voluntarily and knowingly made.

Hatten has also failed to show that counsel was deficient in advising him as to the sentence he faced or that the advice prejudiced him. In the context of a guilty plea, prejudice is present if there is reasonable probability that absent counsel's errors, the petitioner would not have entered a guilty plea and would have insisted on a trial. *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996); *Mangum v. Hargett,* 67 F.3d 80 (5th Cir. 1995), *cert. denied,* 516 U.S. 1133 (1996). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694. Once a guilty plea has been entered, nonjurisdictional defects are waived, including all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.), *cert. denied sub nom. Smith v. McKaskle,* 466 U.S. 906 (1984). When a defendant has pleaded guilty, to satisfy the

17

second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill,* 474 U.S. at 59; *see also Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994).  Hatten pleaded guilty after the court admonished him that the sentence for identity theft would be consecutive to the sentence imposed for the other counts.  There is no basis to find prejudice.

 

 

 

 

 

 

**C.**    **The Claim That Information Learned by the Government During the Proffer Formed the Basis for Additional Charges Against Hatten as Well as the Addition of Relevant Conduct**

Assuming, without deciding, that Hatten is not procedurally barred from raising this issue, it is nonetheless without merit.  The record shows that there was no proffer violation.  The PSR shows that the prosecution had the factual information necessary and sufficient to support the superseding indictment long before the Proffer Letter Agreement dated July 25, 2005 was signed by the prosecutor and defense counsel on August 1, 2005.  Hatten's conclusory allegation of a proffer violation is defeated by the record and provides no basis for the relief he seeks.

**D.**    **The Claim That Counsel Failed to File Objections to the Presentence Report after Having Been Requested to Do So**

Hatten alleges that his counsel failed to file objections to the PSR.  The record shows that Sunde did present objections, which the court considered.  The record also precludes any argument that Hatten was prejudiced as a result of counsel's failure to file certain objections. Hatten has not presented any basis to conclude that there is a reasonable probability that, but for counsel's alleged errors, the sentencing would have been different.  *See United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000).  Hatten has not identified any basis to find a reasonable probability that had Sunde made other objections, Hatten would have received a lesser sentence.  *United States v. Grammas*, 376 F.3d 433, 4388-39 (5th Cir. 2004).

## IV.    Conclusion

The government's motion to dismiss, (Docket Entry No. 121), is granted.  Hatten's Motion Under 28 U.S.C. § 2255, (Docket Entry No. 79), is denied.  The corresponding civil action is dismissed with prejudice.  Hatten's motions for counsel, (Docket Entry Nos. 96-2 and 119), and motion to expedite, (Docket Entry No. 96-1), are denied.  Hatten's motion for affidavits, (Docket Entry No. 113), is denied.

Under the AEDPA, a petitioner must obtain a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability requires "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A certificate of

19

appealability is "a jurisdictional prerequisite" for an appeal on the merits by a habeas petitioner. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at 342. Because Hatten has not made the necessary showing, this court will not issue a certificate of appealability.

Final judgment will issue by separate order.

SIGNED on July 15, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge